UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>THOMAS S. WU,<br><br>    Defendant. | Case No. 11-cv-04988-JSW<br><br>**ORDER GRANTING MOTION FOR TERMINATING SANCTIONS; SETTING CASE MANAGEMENT CONFERENCE; AND ORDERING PARTIES TO FILE JOINT CASE MANAGEMENT STATEMENT**<br><br>Re: Dkt. No. 113 |

Now before the Court is the motion of Plaintiff Securities and Exchange Commission ("SEC") for terminating sanctions against Defendant Thomas S. Wu. The Court has carefully considered the parties' papers, relevant legal authority, and the record in this case, and has had the benefit of oral argument at the hearing on December 11, 2015. For the reasons that follow, the Court hereby GRANTS the SEC's motion for terminating sanctions.

**BACKGROUND**

In October 2011, the SEC filed a Complaint against Defendant Thomas S. Wu and three other former executives of United Commercial Bank, alleging that Defendants engaged in a scheme to understate the bank's loan losses in its 2008 year-end financial statements. (Compl., Dkt. No. 1 ¶ 1.) Final judgment has since been entered as to Wu's three co-defendants. (Dkt. Nos. 21, 56, 89.)

Wu answered the Complaint on December 13, 2011, asserting his rights under the Fifth Amendment and declining to respond to the factual allegations in the Complaint on that ground and others. (Dkt. No. 18.) On June 18, 2015, the parties submitted a joint discovery letter brief, setting forth a dispute over a notice of deposition issued to Wu. (Dkt. No. 83.) The SEC noticed the deposition of Wu for July 20, 2015 in San Francisco, California. (*Id.*) Wu objected to the

1  timing and the location of the deposition. (*Id.*) With regard to location, Wu was alleged to be a
2  resident of Hillsborough, California at the time of the underlying events alleged in the Complaint.
3  (Compl., Dkt. No. 1 ¶ 12.) A substantial part of the events giving rise to this action allegedly took
4  place in San Francisco, California. (*Id.* ¶ 11.) Wu, however, now resides in Hong Kong, and
5  contends that his deposition should be taken there. (Dkt. No. 83 at 4; *see also* Dkt. No. 112 at 9
6  (suggesting that Wu may have moved to Hong Kong between the time his investigative testimony
7  was taken in April 2011 and the filing of this action in October 2011).)
8       This Court referred the case to a randomly-assigned magistrate judge for discovery
9  purposes. (Dkt. No. 84.) Magistrate Judge Elizabeth D. Laporte subsequently ordered the
10 deposition of Wu to proceed as noticed on July 20, 2015 in San Francisco, California. (Dkt. Nos.
11 86, 87.) Wu sought leave to file a motion for reconsideration under Civil Local Rule 7-9(b)(1),
12 contending that new factual information had emerged regarding the risk that, upon entering the
13 United States to participate in a deposition, Wu could be arrested and face criminal charges. (Dkt.
14 No. 90; *see also* Dkt. No. 95 ¶¶ 3, 6-8.) Magistrate Judge Laporte granted leave for Wu to file a
15 motion for reconsideration, but subsequently denied the motion for reconsideration. (Dkt. Nos.
16 92, 105.) Wu did not file a motion to this Court for relief from Magistrate Judge Laporte's orders.
17 *See* N.D. Cal. Civil L. R. 72-2. However, he declined to appear for his noticed deposition.
18 (Habermeyer Decl. ¶¶ 5-7, Dkt. No. 114 (declaration re deposition notices); Sims Decl. Exh. K,
19 Dkt. No. 117-11 (letter declining to return to California for deposition).)
20      This motion followed. The SEC seeks case-terminating sanctions against Wu on the
21 ground that he failed to appear for his deposition as ordered by Magistrate Judge Laporte.
22 Defendant opposes the motion. The Court heard oral argument on the motion on December 11,
23 2015, at which the parties addressed questions that the Court had propounded in writing before the
24 hearing. (Dkt. Nos. 121, 125, 127.) The Court explicitly warned Wu of the possibility of
25 terminating sanctions if he failed to comply with the order to appear for his deposition in the
26 Northern District of California. (Dkt. Nos. 121, 127 at 26, 31.) The Court further provided Wu
27 with one final opportunity to comply with the Court's order, requiring Wu to file a written notice
28 by December 28, 2015, to inform the Court whether Wu would comply with the order to appear

1  for his deposition in the United States. (Dkt. Nos. 125, 127 at 31-32.) On December 28, 2015,
2  Wu filed a notice confirming that he would not comply with the Court's order because he "cannot
3  travel to the United States at this time." (Dkt. No. 128.)
4      The Court shall address additional facts as necessary in its analysis.

## ANALYSIS

The Ninth Circuit has fashioned a set of five factors for district courts to apply in considering whether the entry of a default judgment is appropriate as a sanction under Federal Rule of Civil Procedure 37. This Court therefore considers: (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Wanderer v. Johnston*, 910 F.2d 652, 956 (9th Cir. 1990) (quoting *Malone v. United States Postal Service*, 833 F.2d 128, 130 (9th Cir. 1987). Moreover, in order to warrant imposition of terminating sanctions, the Court must find that the failure to comply was "due to willfulness, bad faith, or fault of the party." *Wyle v. R.J. Reynolds Indus.*, 709 F.2d 585, 589 (9th Cir. 1983).

**A.      The Public's Interest in Expeditious Resolution of Litigation.**

The first factor is the public's interest in expeditious resolution of litigation. This factor weighs heavily in favor of the SEC. The public's interest in prompt resolution of litigation "always favors dismissal." *Pagtalunan v. Galaza*, 291 F.3d 639, (9th Cir. 2002) (quoting *Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir.1999)); *see also* Fed. R. Civ. P. 1 (Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

This case was filed on October 11, 2011, almost five years ago. Much of the delay, however, was not caused solely by Wu, but by the parties' stipulated decision to postpone discovery while criminal proceedings were pending against Wu's co-defendants. (Dkt. Nos. 31, 37, 39, 41, 44, 50, 62, 65, 66, 70.) Now, however, Wu is the last remaining defendant in this case. (Dkt. Nos. 21, 56, 89.) The SEC contacted Wu's counsel regarding the scheduling of Wu's deposition more than a year ago, on or about April 2, 2015. (Habermeyer Decl. ¶ 5, Dkt. No.

3

1    114.) On September 14, 2015, Magistrate Judge Laporte denied reconsideration of her order for
2    Wu to appear in the Northern District of California for his deposition. (Dkt. No. 105.) In the
3    Court's written Notice of Questions for Hearing on November 24, 2015, and orally at the hearing
4    on December 11, 2015, the Court explicitly warned Wu of the possibility of terminating sanctions
5    if he failed to comply with the order to appear for his deposition in the Northern District of
6    California. (Dkt. Nos. 121, 127 at 26, 31.) Yet Wu has refused to comply with the Court's orders
7    and appear for his deposition. (*E.g.*, Dkt. No. 128.) As the Court will discuss further below,
8    having considered the parties' arguments, the Court finds that under the circumstances of this case,
9    more protracted proceedings will not promote the truth-finding process, and would only result in
10   further delay.

**B.    The Court's Need to Manage Its Dockets.**

Where, as here, a court order is violated, the Court's need to manage its docket favors default. *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990) ("Where a court order is violated, the first two factors support sanctions and the fourth factor cuts against a default. Therefore, it is the third and fifth factors that are decisive."). In addition, the Supreme Court has recognized that dismissal "must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (per curiam). Such a deterrent is appropriate here, where Wu, despite multiple opportunities to comply and warnings of the possibility of terminating sanctions, has knowingly violated the Court's order to appear in this District for his deposition. The Court finds that under the circumstances of this case, additional proceedings will be "costly in money, memory, manageability, and confidence in the process" and that these costs will not be outweighed by benefits in terms of this Court's ability to resolve this case on its merits. *In re Phenylpropanolamine Prods. Liability Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006). Accordingly, this factor also heavily favors terminating sanctions.

**C.    The Risk of Prejudice to the Party Seeking Sanctions.**

The third Ninth Circuit factor is the risk of prejudice to the party seeking sanctions. This

1  factor is crucial; delay alone will not justify default.  *Wanderer*, 910 F.2d at 656.  The Court
2  examines whether Wu's actions impaired the SEC's ability to go to trial or threatened to interfere
3  with the rightful decision of the case.  *United States v. Kahaluu Construction Co.*, 857 F.2d 600,
4  604 (9th Cir. 1988) (citing *Malone*, 833 F.2d at 131).  A party's failure to appear for a deposition
5  may cause sufficient prejudice to warrant the sanction of dismissal.  *See The Stars' Desert Inn*
6  *Hotel & Country Club, Inc,. v. Hwang*, 105 F.3d 521, 525 (9th Cir. 1997) ("We also have no
7  difficulty concluding that Stars was prejudiced by Hwang's reluctance to be deposed."); *Hyde &*
8  *Drath v. Baker*, 24 F.3d 1162, 1167 (9th Cir. 1994) (finding prejudice where "this case is not
9  analogous to those cases involving delay but where depositions eventually occurred"); *Adriana*
10  *Int'l Corp.*, 913 F.2d at 1412 (finding prejudice from failure to appear at scheduled depositions
11  combined with refusal to produce documents); *Wanderer*, 910 F.2d at 656 (same).

12      Wu contends that the SEC has not been prejudiced by Wu's refusal to appear for his
13  deposition in the United States because it has other ways to develop the evidence that it needs to
14  go to trial, other than deposing him in this District.  First, prior to filing the complaint in this
15  action, the SEC conducted an investigation, during which Wu appeared pursuant to a subpoena
16  and provided sworn investigative testimony, while represented by counsel.  (Habermeyer Decl. ¶ 2
17  & Exh. A, Dkt. No. 114.)  He provided answers to some questions, including a number of
18  background questions, but also invoked his Fifth Amendment privilege to refuse to answer
19  substantively other questions relevant to this litigation.  (*Id.*)  Wu appears to contend that the SEC
20  is not prejudiced because it may, at trial, use excerpts from this investigative testimony.  But the
21  fact that the SEC interviewed Wu during its investigation does not mean that there is no prejudice
22  from Wu's refusal to appear for his deposition.  This Court finds that the "SEC's motivation
23  during an early investigation, at which open-ended questions are typically asked without
24  expectation the witness will be needed at trial" is very different from "its motivation at an adverse
25  witness deposition, when battle lines have already been drawn and necessary witnesses identified."
26  *SEC v. Jasper*, 678 F.3d 1116, 1128-29 (9th Cir. 2012); see also *SEC v. Saul*, 133 F.R.D. 115,
27  118-19 (N.D. Ill. 1990) (rejecting argument "that it is appropriate to limit the SEC's right to take
28  discovery based upon the extent of its previous investigation into the facts underlying its case").

5

1 Second, Wu contends that the SEC is not prejudiced, because it has other means of
2 discovery available to it besides a deposition in this District. He suggests: "(i) a written
3 confirmation by Mr. Wu that he will invoke his constitutional rights, (ii) the filing of a stipulation
4 to that effect, (iii) the submission of responses to written questions individually with his
5 invocations, (iv) conducting the deposition by videoconference, or (v) conducting the deposition at
6 the U.S. Consulate General in Hong Kong subject to stipulated jurisdiction." (Opp. at 7-8, Dkt.
7 No. 116; *see also* Sims Decl. Exhs. F, K, Dkt. No. 117.) This is an attempt to re-argue the
8 question previously presented to Magistrate Judge Laporte regarding whether Wu should be
9 required to appear for a deposition in this District. Wu did not file a motion for relief from
10 Magistrate Judge Laporte's order pursuant to Civil Local Rule 72-2, and the time has passed to ask
11 this Court to reconsider that order. At oral argument on this motion, Wu conceded that
12 reconsideration of Magistrate Judge Laporte's order is not warranted under this Circuit's standard,
13 and he does not seek this Court's review of her order under Civil Local Rule 72-2. Yet, his
14 argument on this factor now boils down to the contention that it would not have prejudiced the
15 SEC had Magistrate Judge Laporte ruled in his favor. This Court disagrees. None of Wu's
16 proposed alternatives is a true substitute for the oral deposition of the most significant witness in
17 this case, the Defendant, to which the SEC is entitled, and which the Court ordered.

18 Third, Wu appears to contend that, because he would assert his Fifth Amendment privilege
19 if deposed, the SEC will not be prejudiced if unable to depose him, because Wu would not in any
20 event provide relevant information at his deposition. However, Wu's Fifth Amendment
21 protections against self-incrimination in this civil case must be "invoked on a question-by-
22 question basis, and therefore the assertion of the privilege necessarily attaches only to the question
23 being asked and the information sought by that particular question." *Doe ex rel. Rudy-Glanzer v.*
24 *Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000) (citation omitted); *SEC v. Colello*, 139 F.3d 674,
25 677-78 (9th Cir. 1998). As during the investigative testimony, Wu may not invoke the privilege in
26 response to each and every question. Only after going through this question-by-question process
27 would the Commission be entitled to an adverse inference from Wu's refusal to answer. *Glanzer*,
28 232 F.3d at 1265-66. The Court finds, therefore, that the SEC would be prejudiced by the denial

1 of a deposition by oral examination, to take place in this District. A written deposition is no
2 substitute for an oral deposition, and the complicated legal and diplomatic issues that would be
3 entailed in trying to arrange Wu's deposition in Hong Kong demonstrate that this, too, is not a
4 viable alternative to avoid prejudice to the SEC. (Dkt. No. 127 at 37-41.)

The Court finds that this third factor weighs in favor of terminating sanctions, although not as heavily as in cases where the moving party has been denied all methods of discovery.

### D. The Public Policy Favoring Disposition of Cases on Their Merits.

The fourth factor of the Ninth Circuit's test for determining whether dismissal or default is appropriate under Rule 37 of the Federal Rules of Civil Procedure is the public policy favoring disposition of cases on their merits. As mentioned above, this factor usually weighs against dismissal. However, this factor is given little weight where a fair trial appears impossible in any event due to the non-moving party's failure to cooperate. *Hyde & Drath*, 24 F.3d at 1167; *see also, e.g., Eruchalu v. U.S. Bank, Nat'l Ass'n*, No. 1:12-cv-1264-RFB-VCF, 2015 WL 3966023, at *4 (D. Nev. 2015) (balancing public policy factor against party who failed to comply with court order to sit for deposition).

As a preliminary matter, the Court rejects Wu's suggestion that imposing sanctions against him violates public policy because the "DOJ and the SEC coordinated with each other during the investigation of this matter and the SEC has sued Mr. Wu for alleged conduct that could form the basis for criminal charges. . . ." (Opp. at 10; *see also* Hearing Tr., Dkt. No. 127 at 47-48.) The SEC has represented to this Court that the SEC has "not coordinated about Mr. Wu's deposition with DOJ" and that the SEC has no more information about Wu's "indictment or criminal status" than does Wu himself. (CMC Tr., Dkt. 112 at 15-16.) Moreover, "[t]here is nothing improper about the government undertaking simultaneous criminal and civil investigations" as long as it does not act in bad faith. *United States v. Stringer*, 535 F.3d 929, 933, 936-37 (9th Cir. 2008) (citing *United States v. Kordel*, 397 U.S. 1, 11 (1970)). Wu does not suggest that the SEC seeks his deposition in this case solely for the purposes of a criminal prosecution. *See id.* at 937 (citing *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1376-77 (D.C. Cir. 1980) (en banc)). On the current record, the Court finds that SEC seeks Wu's deposition in good faith for appropriate use in this

7

civil action.

The Court asked the parties at oral argument whether there is any realistic possibility that the Court will ever be able to dispose of this case on the merits. In other words, if the Court does not order terminating sanctions at this time, will the Court be confronted with the same question at the time of trial? (Dkt. Nos. 121, 127 at 3-10). The Court has considered the parties' responses and concludes that there is no realistic possibility in this case that the Court will be able to dispose of the case on the merits, at least not without the significant prejudice to the SEC of denying it the right to depose Wu and call him adversely at trial. There is every indication that Wu would refuse to comply with a subpoena or order to appear at trial, just as he has refused to comply with the Court's order to appear in this District for his deposition. As discussed above, requiring the SEC to go to trial without having the opportunity to depose Wu is no solution to this problem. It is Wu, not the SEC, who has failed to comply with the Court's order, and requiring the SEC to go to trial without a full opportunity to conduct discovery and present its case would not advance public policy. For this reason, the Court finds that this factor does not weigh in favor of either party.

**E.      The Availability of Less Drastic Sanctions.**

The fifth factor of the Ninth Circuit's test is the availability of less drastic sanctions. The Ninth Circuit has set forth the following questions for consideration with regard to this determination: "(1) Did the court explicitly discuss the feasibility of less drastic sanctions and explain why alternative sanctions would be inadequate? (2) Did the court implement alternative methods of sanctioning or curing the malfeasance before ordering [terminating sanctions]? (3) Did the court warn the [non-moving party] of the possibility of [terminating sanctions] before actually ordering [such sanctions]?" *Malone*, 833 F.2d at 132. However, the Ninth Circuit has found it is "not always necessary for the court to impose less serious sanctions first, or to give any explicit warning." *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998) (citation omitted).

Here, the Court has heard argument on the question of possible alternative sanctions and it is plain that no alternative sanction exists that would induce Wu to comply with the Court's order. Moreover, no alternative sanction exists that would mitigate, much less cure, the prejudice to the

8

1    SEC. In the briefing on his motion, Wu proposes a single alternative: "an evidentiary sanction
2    whereby the SEC would be permitted to admit the sworn testimony that Mr. Wu provided during
3    the agency's investigation." (Opp. at 11.) This proposal, however, suffers from two crucial
4    defects. First, it would penalize the SEC by inappropriately limiting its use of Wu's testimony at
5    trial to the questions asked during its investigation. *See Jasper*, 678 F.3d at 1128-29; *Saul*, 133
6    F.R.D. at 118-19. Second, this purported sanction may not prove to be a sanction at all. Although
7    the Court has not yet had occasion to rule on this issue, the SEC responds that it is already entitled
8    to use the investigative transcript as evidence in this case. (Repl. at 7-8, Dkt. No. 118.)

9    At the hearing on this motion, Wu cited *The Stars' Desert Inn Hotel & Country Club, Inc,.*
10   *v. Hwang*, 105 F.3d 521 (9th Cir. 1997). In that case, when the defendant refused to return from a
11   foreign country for his deposition, the Court first ordered him either to return to the United States
12   for his deposition or to prepay the moving party's expenses to have his deposition taken in
13   Taiwan. *Id.* at 523. Only after the defendant refused to comply with either alternative did the
14   Court grant a default judgment against him. *Id.* at 523-25. The Ninth Circuit held that this was
15   not an abuse of discretion. *Id.* at 525. This Court asked the parties whether a similar procedure
16   could be feasible in this case. (Notice of Questions, Dkt. No. 121.) The Court concludes,
17   however, that the complicated legal and diplomatic issues that would be entailed in trying to
18   arrange Wu's deposition in Hong Kong prevents this alternative from being viable in this case.
19   (*See* Hearing Tr., Dkt. No. 127 at 37-41.) Like the district court in *The Stars' Desert Inn*, this
20   Court finds that because it is Wu who is defying the Court order to return to the United States for
21   his deposition, it is incumbent upon Wu to demonstrate that his proposed alternative sanction is
22   viable. 105 F.3d at 523. This he has not done. Even if the SEC bears the burden to show that no
23   possible alternative sanction exists, however, the SEC has met this burden, both in its briefing and
24   in the hearing on this motion.

25   Because the Court has concluded that no lesser or alternative sanction is reasonably
26   available in this case, the Court has not imposed such sanctions. The Ninth Circuit has explained,
27   however, that "the case law suggests that warning a plaintiff that failure to obey a court order will
28   result in dismissal can suffice to meet the 'consideration of alternatives' requirement." *Malone*,

9

1    833 F.2d at 132. In addition to the notice that Wu has received from the SEC and from the text of

2    Federal Rule of Civil Procedure 37, the Court has twice explicitly warned Wu of the possibility of

3    terminating sanctions if he fails to comply with the order to appear for his deposition in the

4    Northern District of California. The Court included this warning in its November 24, 2015 notice

5    of questions for hearing. (Dkt. No. 121.) The Court also warned Wu, through his counsel, of this

6    possibility on the record at the December 11, 2015 hearing. (Dkt. No. 127 at 26, 31.) The Court

7    further provided Wu with one final opportunity to comply with the Court's order. (Dkt. Nos. 125,

8    127 at 31-32.) However, on December 28, 2015, Wu confirmed that he would not travel to the

9    United States to attend a deposition in the Northern District of California. (Dkt. No. 128.)

10   Significant time has elapsed since the hearing on this motion, and the Court has received no

11   indication from Wu that he has changed his mind and decided to come to this District for his

12   deposition.

13   The Court therefore finds that this factor weighs heavily in favor of the imposition of

14   terminating sanctions.

15   **F.    Willfulness, Bad Faith, or Fault.**

16   The five factors set forth by the Ninth Circuit balance in favor of an order granting the

17   SEC's motion for terminating sanctions. However, the Court also expressly considers whether

18   Wu's failure to comply with the Court's order for him to appear for his deposition in the Northern

19   District of California was the result of willfulness, bad faith, or fault. *See Wyle v. R.J. Reynolds*

20   *Indus.*, 709 F.2d 585, 589 (9th Cir. 1983). "Disobedient conduct not shown to be outside the

21   control of the litigant is sufficient to demonstrate willfulness, bad faith or fault warranting

22   default." *The Stars' Desert Inn*, 105 F.3d at 525.

23   Wu contends that his decision not to return to the United States for his deposition is not

24   due to willfulness, bad faith, or fault because he has no specific intention to disrupt discovery in

25   this litigation. Rather, he fears return to the United States because of the possibility that he will

26   face arrest and criminal indictment. (Opp. at 3, 11-12.) He "seeks to preserve his right to contest

27   any criminal charges brought against him in an extradition proceeding in Hong Kong." (Opp. at iv

28   (Summary of Argument).) Magistrate Judge Laporte considered a closely related issue in her

10

order denying Wu's motion for reconsideration, and held:

> The issue, then, is what relevance, if any, the risk of arrest upon entry has to the Court's decision regarding the location of a deposition. The Court is persuaded by the reasoning in *Mill-Run Tours, Inc. v. Khasshoggi*, 124 F.R.D. 547 (S.D.NY 1989), that "[i]to would be inappropriate for this Court to act as a prosecutor and order [defendant] to be deposed here as a means of apprehending him," and "[b]y the same token, it would be anomalous if the indictment were to give [defendant] an advantage in this civil litigation by being considered as a factor making it 'inconvenient' for him to appear here for deposition. Accordingly, [defendant]'s criminal difficulties have not been taken into account in connection with the instant motions." *Id.* at 551 (citing *Farquhar v. Shelden*, 116 F.R.D. 70, 73 (E.D. Mich. 1987)). The court in *S.E.C. v. Banc de Binary*, 2014 W.L. 1030862 at *9 (D. Nevada 2014) also followed this approach. Accordingly, this Court has no basis to revisit its previous Order that Mr. Wu's deposition take place in San Francisco.

(Dkt. No. 105, at 5.)

This Court concurs with Magistrate Judge Laporte's analysis of this question.

The Court is further persuaded by the reasoning of *SEC v. Razmilovic*, 738 F.3d 14, 25-27 (2d Cir. 2013), in which the Second Circuit concluded that terminating sanctions against the defendant were not an abuse of discretion where the defendant failed to comply with an order to appear for deposition in New York. In that case, the defendant, Tomo Razmilovic, had been indicted for violations of the securities laws, but refused to return from Europe to face the charges and was considered a fugitive by the United States Department of Justice. *Id.* at 20. The SEC brought a civil enforcement action against Razmilovic, in which it noticed his deposition to be taken in New York City, United States. *Id.* at 19-20. Razmilovic informed the SEC that he would not come to the United States for his deposition, but proposed various alternatives such as, "for example, that he instead be barred from disputing certain facts or asserting certain defenses, or be required to appear for his deposition in Sweden and to pay for the expenses of the deposition." *Id.* at 20-21. Razmilovic also argued that imposing a default judgment "for the sole discovery transgression of failing to attend an in-person deposition in the United States as ordered" would be improper because it would be the same as automatic fugitive disentitlement, which the Supreme Court rejected in civil cases in *Degen v. United States*, 517 U.S. 820 (1996). *Razmilovic*, 738 F.3d at 21. The district court imposed a default judgment on Razmilovic, finding that his failure to

11

appear was "willful and intentional," and noting that the default judgment was imposed "not because Razmilovic was a fugitive from the criminal case but solely because he had willfully violated the court's October 2009 Order to appear for his deposition." *Id.* The Second Circuit affirmed, holding that the entry of a default judgment "because of Razmilovic's refusal to comply with the district court's legitimate discovery order plainly did not run afoul of *Degen*." *Id.* at 26. The Second Circuit further held that Razmilovic's refusal to comply with the discovery order "made plain that his disobedience was willful and intentional" and that "[n]one of Razmilovic's proposed alternative sanctions was likely to lead to his compliance with the court's order for his deposition as noticed by the SEC or to provide the SEC with the discovery methods to which it was entitled." *Id.*

Wu does not dispute that terminating sanctions in *Razmilovic* were not entered because Razmilovic was a fugitive, but rather, because Razmilovic did not comply with the court's order to appear in the United States for his deposition. (Hearing Tr., Dkt. No. 127 at 32.) He contends, however, that *Razmilovic* is distinguishable from this case because Razmilovic was a fugitive, and because there is no indication in the *Razmilovic* decision that Razmilovic had expressed an intention to assert his Fifth Amendment privilege. (*Id.* at 32-33.) The Court finds that these distinctions are irrelevant to the question of whether Wu's defiance of the order for his deposition was willful. As the Supreme Court explained in *Degen*, a defendant's absence from the forum, while it does not expose him to fugitive disentitlement in a civil case, also "entitles him to no advantage. If his unwillingness to appear in person results in non-compliance with a legitimate order of the court respecting pleading, discovery, the presentation of evidence, or other matters, he will be exposed to the same sanctions as any other uncooperative party. A federal court has at its disposal an array of means to enforce its orders, including dismissal in an appropriate case." 517 U.S. 820, 827 (1996). A defendant who is not a fugitive is not immunized from these same means of enforcement of a court order.

This case is very different from *Zhi Yang Zhou v. David*, cited by Wu, in which the plaintiff failed to appear at a deposition because she was temporarily in China caring for a sick relative "at both the time of the order and the deposition." No. 09-cv-06059-JSC, 2012 WL

1458180, *2 (N.D. Cal. Apr. 26, 2012). In that case, the plaintiff returned to the United States, and the Court concluded that her conduct was not willful and that monetary sanctions would suffice, and ordered her to appear for her deposition. The facts of this case are wholly different.

Defendant concedes that he is unaware of any case that holds that fear of indictment and arrest constitutes good cause for failure to appear at a deposition. (Hearing Tr., Dkt. No. 127 at 27, 42.) Additionally, as discussed above, Defendant's intention to assert his Fifth Amendment privilege does not obviate the SEC's right to depose him. *Cf. Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995) ("defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege.").

The Court concludes that Wu's considered, express refusal to comply with the Court's order to appear at his noticed deposition in the Northern District of California is willful.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the SEC's motion for terminating sanctions against Defendant Thomas S. Wu.

The Court shall hold a case management conference in this case on Friday, October 7, 2016 at 11:00 a.m. in Courtroom 5, 2nd Floor, Federal Courthouse, 1301 Clay Street, Oakland, California.

The parties shall meet and confer and file a supplemental joint case management statement no later than Friday, September 30, 2016. In addition to any other issues the parties may address in the case management statement, the parties shall address: (1) the next procedural steps to be taken in this case to determine damages and other relief and enter judgment; (2) what role, if any, Defendant shall have in the remainder of this case; (3) a description of prospects for settlement, ADR efforts to date, and a specific ADR plan for the case; and (4) a proposed schedule, which

///
///
///
///
///

1  shall include proposed deadlines for the briefing of any disputed legal issues and a proposed date
2  for an evidentiary hearing, if necessary.
3  **IT IS SO ORDERED.**
4  Dated: September 16, 2016

_____
JEFFREY S. WHITE
United States District Judge